2013 COA 59

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Justyn E. TYME, Defendant–Appellant.**

**Court of Appeals No. 11CA1520**

Colorado Court of Appeals, Div. I.

Announced April 25, 2013

Rehearing Denied June 13, 2013

protect against dangers of which the land owner *knew or should have known*") (emphasis added).

Mesa County District Court No. 10CR682, Honorable Thomas M. Deister, Judge

John W. Suthers, Attorney General, Wendy J. Ritz, Joan E. Mounteer, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Erin K. Grundy, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE TAUBMAN

¶ 1 Defendant, Justyn E. Tyme, appeals the trial court's judgment of conviction entered on jury verdicts finding him guilty of sexual assault, third degree assault, and false imprisonment. We affirm.

## I. Background

¶ 2 This case stems from Tyme's sexual assault of the victim, G.A., on May 15, 2011. Five days after the assault, G.A. submitted to a Sexual Assault Nurse Examiner (SANE)[1] examination completed by Sue Goebel. G.A. attended this exam at the request of law enforcement. At trial, Goebel testified, as an expert witness, that she collects a complete medical history from the patient as part of the exam in order to "guide the assessment that [she is] going to do and to diagnose and treat." In response to the prosecutor's questioning, Goebel testified about information she had learned from G.A. during the exam.

---

1. A SANE is a professional registered nurse who has received specialized forensic education in order to provide comprehensive care to adult, adolescent and child victims of sexual assault. A SANE demonstrates clinical competence in the collection of forensic evidence from both victims of violence as well as perpetrators and has the ability to provide expert testimony in a court of law. SANEs work collaboratively with law enforcement, prosecutors, victim advocates[,] and community agencies.
*People v. Montanez,* 2012 COA 101, ¶ 16, 300 P.3d 940.

Tyme's counsel objected to these statements based on hearsay. The trial court overruled the objection because the statements were made for purposes of medical diagnosis or treatment. *See* CRE 803(4).

¶ 3 Additionally, the prosecutor sought to admit Goebel's written report of her examination of G.A. Tyme's counsel again objected on the basis of hearsay. The trial court concluded that the written report also qualified as statements made for purposes of medical diagnosis or treatment, overruling the objection.

¶ 4 The jury convicted Tyme as noted above.

¶ 5 This appeal followed.

## II. Statements Made for Purpose of Medical Diagnosis or Treatment

¶ 6 The question of whether a SANE's testimony regarding statements elicited from a victim qualifies under an exception to the hearsay rule is one of first impression in Colorado.

¶ 7 Tyme contends that the trial court abused its discretion in concluding that both the SANE's testimony and her report were admissible under the medical diagnosis or treatment hearsay exception because the purpose of the SANE examination was to collect evidence, not to treat or diagnose the victim. We disagree.[2]

### A. Standard of Review

¶ 8 We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Rath,* 44 P.3d 1033, 1043 (Colo.2002). A trial court abuses its discretion in this context if its decision is "manifestly arbitrary, unreasonable, or unfair." *Id.*

### B. Analysis

■ ¶ 9 A "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is inadmissible hearsay, subject to certain exceptions. CRE 801(c), 802. The hearsay rule provides an exception for statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." CRE 803(4). Such statements are presumed reliable because of a patient's belief that his or her effective treatment may largely depend on the accuracy of the information provided to a physician or nurse. *People v. Galloway,* 726 P.2d 249, 252 (Colo.App.1986). Generally, statements made for purposes of medical diagnosis or treatment are admissible if they meet a two-part test of reliability: (1) "the declarant's motive in making the statement must be consistent with the purpose of promoting treatment or diagnosis"; and (2) "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *People v. Allee,* 77 P.3d 831, 834 (Colo.App.2003) (citing *Galloway,* 726 P.2d at 253).

■ ¶ 10 The test for admissibility is modified, however, when a declarant makes a statement to a healthcare professional in preparation for litigation. In *King v. People,* 785 P.2d 596, 599 n.3 (Colo.1990), the supreme court held that, under these circumstances, the medical diagnosis or treatment exception does not require an independent showing of the declarant's trustworthiness. Rather, a statement's trustworthiness can be established by a showing that it was reasonably pertinent to diagnosis and was relied upon by the healthcare professional to arrive at an expert diagnosis. *Id.* at 602. Thus, the court expressly overruled the requirement of an independent showing of the declarant's motive for making the statement. *Id.* at 599 n.3.

¶ 11 The *King* court further held that the medical diagnosis or treatment exception does not distinguish between a doctor "who is consulted for the purpose of treatment" and a doctor who examines a party "for the

---

**2.** On appeal, Luna does not assert that the SANE's written report was inadmissible for reasons other than those related to CRE 803(4). Accordingly, while we address only the issue of the SANE's testimony, we note that the same analysis and conclusion apply to Luna's objections to the written report.

purpose of diagnosis only," even if the latter "is consulted only in order to testify as a witness." *Id.* at 601 (quoting *United States v. Iron Shell,* 633 F.2d 77, 83 (8th Cir.1980)).

¶ 12 Although *King* did not involve statements made to a SANE, its reasoning applies here. King was convicted of two counts of murder after he shot and killed his wife and his sister-in-law. *Id.* at 599. After his arrest, a defense-retained psychiatrist examined King and later testified that he was suffering from "severe depression and 'emotional overload' at the time of the killings." *Id.* at 598. In finding that the psychiatrist's statements were admissible under the medical diagnosis or treatment exception, the court reasoned that "the mere fact that a psychiatrist examines a party for the purposes of evaluating the party's mental condition with respect to an issue in pending litigation does not render the party's statements beyond the pale of the hearsay exception when such statements are reasonably pertinent to psychiatric diagnosis." *Id.* at 601–02.

¶ 13 Additionally, although Colorado appellate courts have not addressed statements made to SANEs, the majority of state courts that have directly confronted the issue follow the reasoning in *King. See Davison v. State,* 282 P.3d 1262, 1269 (Alaska 2012); *State v. Telford,* 948 A.2d 350, 354 (Conn.App.Ct. 2008); *Webster v. State,* 827 A.2d 910, 915 (Md.Ct.Spec.App.2003); *State v. Vigil,* 283 Neb. 129, 810 N.W.2d 687, 696–97 (Neb. 2012); *State v. Mendez,* 148 N.M. 761, 242 P.3d 328, 340 (N.M.2010); *State v. Payne,* 225 W.Va. 602, 694 S.E.2d 935, 942 (W.Va. 2010).

¶ 14 For example, in rejecting a per se ban on statements made to a SANE during an examination, the New Mexico Supreme Court held that the mere fact that the examination has both medical and forensic purposes does not render inadmissible all statements made during the course of the examination. *Mendez,* 242 P.3d at 339. In a well-reasoned opinion, the *Mendez* court concluded that during the exam a declarant may make a statement for medical diagnosis or treatment purposes, even if the primary purpose of the exam is forensic. *Id.* at 337. Thus, the *Mendez* court concluded that the question of

admissibility should turn on whether the declarant's statements themselves are trustworthy, not merely whether the purpose of the exam was medical or forensic. *Id.* at 339.

¶ 15 Other state courts have similarly found that it is the trustworthiness of the declarant's statements, rather than the purpose of the exam, that matters for admissibility. *See Davison,* 282 P.3d at 1269; *Telford,* 948 A.2d at 354; *Webster,* 827 A.2d at 915; *Vigil,* 810 N.W.2d at 696–97; *Payne,* 694 S.E.2d at 942. These courts have uniformly held that statements made during the course of a forensic exam are admissible if they meet the same two-part test delineated by the division in *Galloway,* 726 P.2d at 253. *See Davison,* 282 P.3d at 1269; *Telford,* 948 A.2d at 354; *Webster,* 827 A.2d at 915; *Vigil,* 810 N.W.2d at 696–97; *Mendez,* 242 P.3d at 340; *Payne,* 694 S.E.2d at 942 (adopting the two-part test in the context of a child victim). We find this reasoning to be persuasive.

■ ¶ 16 In light of the holding in *King* and the reasoning of the several state courts addressing this issue, we conclude that statements made to a SANE during a SANE exam are admissible if the statements satisfy the two-part test delineated in *Galloway,* and modified in *King* : (1) the statement is reasonably pertinent to treatment or diagnosis; and (2) the content of the statement is such as is reasonably relied on by a physician in treatment or diagnosis. *King* at 603.

■ ¶ 17 However, not all statements made during such examinations will be admissible. Where the facts and circumstances surrounding the statements give rise to an inference that the forensic examination or interview had no medical or diagnostic characteristic, but was rather purely investigative, the statements may not be considered trustworthy and thus may not be admissible. This is so because such statements would not have been made for the purpose of promoting diagnosis or treatment. *See Vigil,* 810 N.W.2d at 696–97 (nurse testified purpose of exam was purely forensic); *State v. Rose,* No. CA2011–11–214, 2012 WL 5994971, at *9 (Ohio Ct.App. Dec. 3, 2012) (unpublished decision) (nurse's role was merely for investigative and evidence-gathering purposes); *Rodriguez v. State,* 280 S.W.3d 288, 291 (Tex. App.2007).

¶ 18 Here, Goebel testified that as part of her forensic exam she elicited a medical history from G.A. During the exam, G.A. described the sexual assault by Tyme. On direct examination, Goebel recited what G.A. told her during the exam. Overruling defense counsel's objections, the trial court admitted the testimony.

¶ 19 Tyme asserts that because G.A. had already been treated by a physician on the night of the alleged assault and because the SANE did not provide any follow-up treatment, G.A.'s statements were made solely for purposes of investigation. The prosecution argues that Goebel elicited the medical history because it "lays down the plan [Goebel had] in terms of doing [her] forensic medical exam," and used the statements to "guide [her] assessment and the diagnosis and treatment of this patient." Thus, the parties base their arguments solely on the purpose of the exam. But, as *Mendez* notes, it is not the purpose of Goebel's exam which concerns us, but rather the trustworthiness of G.A.'s statements.

¶ 20 The trial court concluded that G.A.'s statements qualified as statements made for purposes of medical diagnosis or treatment without making any specific findings as to G.A.'s motive or Goebel's reliance. Nevertheless, the record supports the trial court's ultimate conclusion. Goebel testified that she relied on the medical history to guide her examination and used it "to diagnose and treat," thereby satisfying the first prong of the reliability test. She also testified that SANEs normally rely on similar histories to "guide the[ir] diagnosis and treatment," thereby demonstrating the reasonableness of her reliance on G.A.'s statements in satisfaction of the second prong of the reliability test. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Goebel's testimony or her report.

¶ 21 The judgment is affirmed.

JUDGE GRAHAM and JUDGE HAWTHORNE concur.